UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| STEVEN JOHNSON | * | CIVIL ACTION NO. 18-3286 |
| | * | |
| | * | SECTION: "H"(1) |
| VERSUS | * | |
| | * | JUDGE JANE TRICHE MILAZZO |
| | * | |
| SAFEPOINT INSURANCE CO., ET AL. | * | MAGISTRATE JUDGE |
| | * | JANIS VAN MEERVELD |
| ************************************* | * | |

ORDER AND REASONS

Plaintiff Steven Johnson seeks to amend his complaint to name a Louisiana citizen to this lawsuit, which would destroy this Court's diversity jurisdiction. Because the Court finds that the primary purpose of this amendment is to defeat diversity jurisdiction and because Mr. Johnson would not suffer any harm by denial of his motion, the Motion for Leave to File First Supplemental and Amended Complaint (Rec. Doc. 7) is DENIED. Oral argument set for September 19, 2018, is cancelled.

Background Facts

Mr. Johnson's house was destroyed by fire on or about October 14, 2017. At the time, the property was insured by Safepoint Insurance Company ("Safepoint"). In February 2018, Safepoint denied Mr. Johnson's claim for losses resulting from the fire. Mr. Johnson filed this lawsuit in Louisiana state court against Safepoint alleging that Safepoint was arbitrary and capricious and acted without probable cause in failing to pay his claim. Mr. Johnson also sued Richter Insurance Group, L.L.C. ("Richter"), the alleged successor in interest to People's First Insurance, and Kimberly Suzanne Cook, the alleged sole proprietor of People's First Insurance. Mr. Johnson

1

alleged that Ms. Cook and People's First Insurance sold the Safepoint policy to Mr. Johnson and misadvised him that the losses he sustained would be covered under the Safepoint insurance policy.

On March 27, 2018, Safepoint removed the action to this Court, invoking this Court's diversity jurisdiction because Mr. Johnson is a Louisiana citizen and Safepoint is a Florida citizen. Safepoint asserted that Richter and Ms. Cook were improperly joined because Mr. Johnson has no legitimate claim against them. Safepoint submits that Mr. Johnson's claim was denied because he did not cooperate with the investigation of his claim, and not because of coverage issues. Thus, Safepoint insists, Mr. Johnson cannot establish a claim arising out of Ms. Cook and Richter allegedly misleading him regarding coverage. Mr. Johnson has not filed a motion to remand.

On July 26, 2018, Mr. Johnson filed the present Motion for Leave to File Supplemental and Amended Complaint, seeking to substitute Donald J. Calliouet, Sr., as a defendant in place of Richter and Ms. Cook. Mr. Johnson asserts that he has learned that Mr. Calliouet, and not Ms. Cook, is the sole proprietor of and doing business as People's First Insurance Agency. Mr. Calliouet is a Louisiana citizen. A few days later, Mr. Johnson moved for, and the District Court granted, the dismissal of Richter and Ms. Cook.

Safepoint opposes the proposed amendment, arguing that the amendment is futile because just as Mr. Johnson could not state a claim against Ms. Cook and Richter, he cannot state a claim against Mr. Calliouet. Safepoint insists that Mr. Johnson is merely seeking to defeat this Court's diversity jurisdiction by joining a Louisiana defendant.

Law and Analysis

1. *Standard for Motion to Amend Complaint*

Under Federal Rule of Civil Procedure 15(a)(2), when the time period for amending a pleading as a matter of course has passed, a party may amend its pleadings by consent of the parties

or by leave of court. "The court should freely give leave when justice so requires." Fed. R. Civ. Proc. 15(a)(2). Thus, the United States Court of Appeals for the Fifth Circuit instructs that the "district court must possess a 'substantial reason' to deny a request for leave to amend." Smith v. EMC Corp., 393 F.3d 590, 595 (5th Cir. 2004). Nonetheless, "that generous standard is tempered by the necessary power of a district court to manage a case." Yumilicious Franchise, L.L.C. v. Barrie, 819 F.3d 170, 177 (5th Cir. 2016) (quoting Schiller v. Physicians Res. Grp. Inc., 342 F.3d 563, 566 (5th Cir. 2003)). The court may consider numerous factors when deciding whether to grant a motion for leave to amend, including "undue delay, bad faith or dilatory motive on the part of the movant, repeated failures to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, and futility of the amendment." Schiller v. Physicians Res. Grp. Inc., 342 F.3d 563, 566 (5th Cir. 2003).

"If after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to the State court." 28 U.S.C. § 1447(e); Cobb v. Delta Exports, Inc., 186 F.3d 675, 677-78 (5th Cir. 1999) (holding that a district court may not allow an amended pleading that adds a non-diverse defendant, but then refuse to remand on the basis of fraudulent joinder). Because the Court's decision on a motion for leave to amend to add a non-diverse defendant will affect its jurisdiction over the matter, the Court must "scrutinize that amendment more closely than an ordinary amendment." Hensgens v. Deere & Co., 833 F.2d 1179, 1182 (5th Cir. 1987). "[I]n deciding whether to grant leave to amend, courts must balance the defendant's interest in retaining the federal forum with plaintiff's competing interest in avoiding parallel federal/state lawsuits." Williams v. Carmean, No. CIV. A. 99-1095, 1999 WL 717645, at *1 (E.D. La. Sept. 13, 1999). In Hensgens, the Fifth Circuit instructed courts to consider "the extent to which the purpose of the

3

amendment is to defeat federal jurisdiction, whether plaintiff has been dilatory in asking for amendment, whether plaintiff will be significantly injured if amendment is not allowed, and any other factors bearing on the equities." 833 F.2d at 1182.

Typically, if the plaintiff states a valid claim against the proposed defendant, the primary purpose of the amendment is not to defeat diversity jurisdiction. Schindler v. Charles Schwab & Co., No. CIV.A.05-0082, 2005 WL 1155862, at *3 (E.D. La. May 12, 2005) ("[C]ourts have . . . recognized that when a plaintiff states a valid claim against a defendant, it is unlikely that the *primary* purpose of bringing those defendants into a litigation is to destroy diversity jurisdiction.") (emphasis in original); Noble v. Norfolk S. Corp., No. CIV.A. 02-3233, 2003 WL 1618590, at *3 (E.D. La. Mar. 26, 2003) ("As long as the plaintiff states a valid claim against the new defendants, the principal purpose is not to destroy diversity jurisdiction."). In determining whether the plaintiff states a claim against the proposed non-diverse defendant, courts employ the same standard used when considering whether a non-diverse defendant was fraudulently joined in the first place. Wells v. Medtronic, Inc., 171 F. Supp. 3d 493, 506 (E.D. La. 2016) (relying on Cobb v. Delta Exports, Inc. to hold that the "fraudulent joinder" test is used when determining whether to allow a pleading amendment that would join a non-diverse defendant and destroy the court's diversity jurisdiction); Noble, 2003 WL 1618590, at *3 (using the "fraudulent joinder" standard to determine whether the plaintiff's primary purpose in joining a non-diverse defendant was to defeat the court's diversity jurisdiction); see Cobb, 186 F.3d at 677-78 (explaining in dicta that "[a] request to join a party against whom recovery is not really possible and whose joinder would destroy subject matter jurisdiction (*i.e.,* a request fraudulently to join a party) would never be granted").

Thus, employing the "fraudulent joinder" test, the court must determine whether there is "any possibility of recovery under state law against" the proposed defendant. See Burden v. Gen. Dynamics Corp., 60 F.3d 213, 216 (5th Cir. 1995); Noble, 2003 WL 1618590, at *4 (E.D. La. Mar. 26, 2003). Typically, the court will conduct a Rule 12(b)(6) type analysis of the allegations complaint. Wells, 171 F. Supp. 3d at 506. But, "in rare cases, if 'a plaintiff has stated a claim, but has misstated or omitted discrete facts that would determine the propriety of joinder . . . the district court may, in its discretion, pierce the pleadings and conduct a summary inquiry.'" Id. (quoting Smallwood v. Illinois Cent. R. Co., 385 F.3d 568, 573 (5th Cir. 2004)) (alteration in original). The burden of persuasion lies with the party who claims the proposed joinder is improper, and it is a heavy burden. Davidson v. Georgia-Pac., L.L.C., 819 F.3d 758, 765 (5th Cir. 2016). Accordingly, the court "view[s] 'all unchallenged factual allegations, including those alleged in the complaint, in the light most favorable to the plaintiff' and resolve[s] '[a]ny contested issues of fact and any ambiguities of state law' in the plaintiff's favor." Id. (quoting Davidson v. Georgia-Pac., L.L.C., 819 F.3d 758, 765 (5th Cir. 2016)) (third alteration in the original).

   2. *Primary Purpose of Amendment: Is there any possibility of recovery against the non-diverse defendant?*

The Court finds that there is no possibility that Mr. Johnson could recover against Mr. Callouiet as the sole proprietor of the insurance agency that allegedly mislead Mr. Johnson into believing that the Safepoint policy would cover his losses. Although it is possible for an insured to maintain a cause of action against his insurance agent, the facts of this case do not support such a claim.

There does not appear to be a dispute that an insurance agent or broker may be held liable for failing to procure the desired coverage.[1] Taylor v. Sider, 1999-2521 (La. App. 4 Cir. 5/31/00), 765 So. 2d 416, 418, writ denied, 2000-2004 (La. 10/6/00), 771 So. 2d 86 ("The client may recover from the agent the loss he sustains as a result of the agent's failure to procure the desired coverage if the actions of the agent warranted an assumption by the client that he was properly insured in the amount of the desired coverage."). "Procurement of insurance includes advising customers regarding recommended coverage and possible gaps in coverage, obtaining the right amount of coverage requested by the customer, and promptly notifying of a failure to obtain coverage for the customer." Ragas v. Tarleton, No. CIVA 06-4137, 2006 WL 2925448, at *3 (E.D. La. Oct. 10, 2006) (internal citations omitted).

Safepoint argues this principle of insurance agent liability is not available against Mr. Calliouet because Mr. Johnson's claim was not denied for lack of coverage. Safepoint cites the Denial of Claim letter, which states that "Mr. and Mrs. Johnson have failed to cooperate in the investigation and handling of this claim in providing documents, materials and items as requested pursuant to the contract/policy provisions. Therefore, Safepoint Insurance Company denies the claim . . . for damage to the premises . . . ." (Rec. Doc. 7-4).[2] Thus, Safepoint argues, Mr. Johnson's

---

[1] Mr. Johnson also cites the principle that "an insurance broker, as the agent of his client, is responsible not only for his unfaithfulness but also for his fault or neglect." Maclan Servs. Co. v. Louisiana Companies, 351 So. 2d 827, 828 (La. Ct. App. 1977). The cited cases all concern a broker's liability for actions related to the cancellation of an insurance policy. See Naulty v. Oupac, Inc., 448 So. 2d 1322, 1328 (La. Ct. App. 1984) (holding the broker was liable for requesting the policy be cancelled when it feared the insured would not pay the premium, although he was not yet in default); Maclan, 351 So. 2d at 828 (holding that the broker could not be held liable for failing to remind the insured that the notice of cancellation for failure to pay had not been rescinded); Foster v. Am. Deposit Ins. Co., 435 So. 2d 571, 574 (La. Ct. App. 1983) (holding the broker liable for misadvising the insured as to the date the policy would be cancelled). These cases bear no factual resemblance to the cause of action Mr. Johnson seeks to advance here.

[2] Safepoint urges that, although the letter was not incorporated into Mr. Johnson's complaint, the court should pierce the pleadings and consider this summary evidence here because Mr. Johnson's complaint is misleading without it. Indeed, the proposed pleading alleges that Mr. Johnson was lead to believe he would be covered by the insurance agent for his losses. The letter makes clear that Mr. Johnson's claim was denied for failure to cooperate in accordance with the policy provisions and not because he lacked coverage for the type or amount of damages claimed. Mr. Johnson does not dispute the authenticity of the letter and, in fact, it was attached as an exhibit to Mr. Johnson's Motion for

claim was denied because he failed to provide the requested documents as he was required to do. Safepoint points out that Mr. Johnson does not assert that his claim was denied for lack of fire coverage and that Mr. Calliouet had previously represented that the policy covered fire-related damage. Had Mr. Johnson made these allegations, Safepoint seems to say, he might have a cause of action against Mr. Calliouet. But because the insurance claim was not denied for lack of coverage, Safepoint argues, it is not possible for Mr. Johnson to sustain a cause of action.

Mr. Johnson does not dispute the language in the denial letter. Nor does he argue that his claim is based on the existence or nonexistence of coverage for fire related damage. Instead, he argues for a different interpretation of the language in the denial letter. He points out that in explaining why the claim is being denied, the letter states "pursuant to the contract/policy provisions." He argues that "the basis of the denial was Plaintiff's alleged failure to comply with the specific provisions contained with the insurance policy <u>selected and procured by People's First Insurance</u> based upon Plaintiff's requests and specifications." (Rec. Doc. 7-1, at 4) (emphasis in original). Thus, he seems to argue that to the extent he failed to comply with the policy provisions regarding providing information to the insurer, the insurance agent should be held liable for having chosen a policy with those provisions. Yet Mr. Johnson does not allege or argue that he requested a policy that did not contain provisions requiring cooperation with the investigation of a claim. He does not argue or allege that he was misled by the insurance agent as to the extent of his obligation to cooperate with the investigation of his claim. It is unclear whether Mr. Johnson would have been reasonable in believing that his agent had procured an insurance policy that did not impose a duty to provide requested documents during the investigation of a claim.

---

Leave to Amend. Accordingly, the Court considers the denial letter in its determination of whether Mr. Johnson can state a claim against Mr. Calliouet.

The Court finds Mr. Johnson's reading of the denial letter too strained to support a cause of action against Mr. Calliouet. It is clear from the proposed amended complaint that Mr. Johnson has attempted to assert a claim that he was led by Mr. Calliouet's company to believe that the "losses sustained would be covered." But the only possible reading of the denial letter is that his claim was denied due to his failure to provide the requested documentation, not because the policy did not cover the damages. The Court cannot find that Mr. Johnson has a possibility of recovery against Mr. Calliouet. Thus, the Court must find that Mr. Johnson's primary purpose in filing this amendment is to destroy diversity jurisdiction.

### 3. *Whether Plaintiff Has Been Dilatory or Would be Significantly Injured*

The next factor to consider is whether Mr. Johnson was dilatory in filing his proposed amendment. The record indicates that Mr. Johnson has not been dilatory. Mr. Johnson's original state court petition included the same claim he seeks to assert against Mr. Calliouet, except against Ms. Cook and Richter. The inclusion of the insurance agent claim by Mr. Johnson in his original petition (albeit against the wrong people) indicates that he has timely asserted this claim and was not belatedly asserting it in response to the removal.

The next Hensgens factor requires the Court to consider whether Mr. Johnson would be significantly injured by the denial of his proposed amendment. Because the Court has already found that Mr. Johnson cannot state a claim against Mr. Calliouet, denial of his motion will not result in significant injury. Further, Mr. Johnson has advanced no other considerations that would counsel in favor of allowing the amendment.

### Conclusion

Although Mr. Johnson has not been dilatory in seeking to raise his insurance agent claim, this one factor is not enough to allow the amendment here. Because there is no possibility that Mr.

Johnson could recover against the proposed non-diverse defendant and because Mr. Johnson would not suffer any injury if his motion was denied, Mr. Johnson's Motion for Leave to File First Supplemental and Amended Complaint (Rec. Doc. 7) must be denied.

New Orleans, Louisiana, this 17th day of September, 2018.

                                                 Janis van Meerveld
                                        United States Magistrate Judge