UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| STEVEN JOHNSON, *Plaintiff* v. SAFEPOINT INSURANCE COMPANY RICHTER INSURANCE GROUP, LLC and KIMBERLY SUZANNE COOK *Defendants* | CIVIL ACTION NO.: 2:18-CV-03286 JUDGE JANE TRICHE MILAZZO MAGISTRATE JUDGE JANIS VAN MEERVELD |

## **MEMORANDUM IN SUPPORT OF SAFEPOINT INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT**

Defendant, SafePoint Insurance Company ("SafePoint"), files this Memorandum in Support of its Motion for Summary Judgment seeking a judgment that no coverage exists under the subject SafePoint policy for the fire losses claimed by Steven Johnson. As such, SafePoint owes no payments under the policy, and the Court should dismiss Plaintiff's claims, with prejudice, at Plaintiff's cost.

## **FACTS**

On October 14, 2017, Plaintiff allegedly sustained damages to his rental property located at 228 Vine Street in Slidell, Louisiana as a result of a fire ("the loss location"). Plaintiff made a claim for the fire loss under his homeowner's policy (No. SPID1362399) with SafePoint Insurance Company ("SafePoint"). (Ex. 1, 1-1). On October 19, 2017, SafePoint retained an independent expert to determine the cause and origin of the fire who concluded in a report dated October 26, 2017 that the fire was incendiary in origin. (Ex. 2, 2-1). Three days prior to receipt of this report, on October 23, 2017, SafePoint sent Plaintiff correspondence regarding Plaintiff's duties under the

policy to cooperate with SafePoint in the investigation of his claim and to provide certain documentation related to the loss. (Ex. 1-2). On October 27, 2017, SafePoint's counsel requested documentation from Plaintiff and his availability to submit to an Examination Under Oath ("EUO") as required by his policy. (Ex. 1-3) On November 3, 2017, Plaintiff's counsel responded with available dates for the EUO and stated that Plaintiff had not yet finished compiling documents but would "have them . . . well in advance of the deposition." (Ex. 1-4). However, that did not happen. Despite not having all of the documents SafePoint requested, the EUOs of Plaintiff and his spouse, Sandra Johnson, proceeded on December 6, 2017, December 19, 2017, and January 4, 2018, respectively.[1] For each of these EUOs SafePoint instructed Plaintiff and his spouse to bring the prior-requested documents with them, and each time both Plaintiff and his spouse either failed to or refused to produce said documents. (excerpts from EUO transcripts attached hereto as Exs. 3, 4, 5, & 6; *See* Ex. 3 pp. 27-28; Ex. 4 p. 45-47; Ex. 5 pp. 25-43; and Ex. 6 pp. 5-6, 28-29, 85-87).

On January 9, 2018, SafePoint again requested production of the outstanding documents. (Ex. 1-5) On January 24, 2018, Plaintiff informed SafePoint that Plaintiff was "not going to provide any further items in this matter." (Ex. 1-6). As a result of Plaintiff's refusal to cooperate, SafePoint sent a letter to Plaintiff on February 9, 2018 denying his claim on this basis. (Ex. 1-7 p. 2). On February 27, 2018, Plaintiff filed suit in Louisiana state court alleging that SafePoint improperly denied his claim and acted in bad faith.[2] On March 27, 2018, SafePoint filed its Notice of Removal. (R. Doc. 1).

---

[1] Plaintiff erroneously states throughout this litigation that the EUOs "spann[ed] the course of three entire days." (R. Doc. 25, p.1). The EUOs began after lunch on each day, and on two of the days, Plaintiff's counsel requested that the examinations prematurely end due to conflicts in his schedule.

[2] In addition to suing SafePoint, Plaintiff also alleged fraud and malpractice claims against the insurance agents who allegedly sold Plaintiff the subject policy—Richter Insurance Group, LLC and Kimberly Suzanne Cook. Plaintiff subsequently dismissed both of these Defendants, leaving SafePoint as the sole Defendant in this case.

To date, SafePoint has not received the following prior-requested documents: loan agreements or documentation of indebtedness; employment records; information pertaining to any and all fire and burglary alarm systems installed to protect the loss location; copies of cell phone records; documents substantiating Plaintiff's income and/or debt for the last three years; estimate of damages and fire reports for the three to four fires occurring on Plaintiff's property from May 1, 2016 to October 14, 2017 and any evidence of repair/replacement in between; copies of fire reports, arson reports, criminal, and sheriff reports of the losses to the premises from January 1, 2015 to present; a copy of a completed Personal Property Inventory Form listing all of the property burned and a list of personal property salvaged; and copies of any and all policies (renters, dwelling, builders risk, etc.) in effect for the residence, personal property, and contents destroyed in the fires.

Plaintiff failed to "provide [SafePoint] with records and documents" requested. (Ex. 1-1 p. 17 (originally marked as "Page 6 of 9")). As a result, SafePoint seeks summary judgment declaring that no coverage exists for the subject fire because Plaintiff breached his duty to cooperate under the subject policy.

## LAW AND ARGUMENT: PLAINTIFF'S CLAIMS SHOULD BE DISMISSED BECAUSE HE BREACHED HIS DUTY TO COOPERATE

Plaintiff failed to furnish the requested documents related to the subject fire on multiple occasions, constituting a breach of his contractual duty to cooperate. His breach of this duty materially prejudiced SafePoint's investigation into this matter, as will be more fully explained below. As such, SafePoint is entitled to a judgment as a matter of law in its favor.

**I.  SUMMARY JUDGMENT STANDARD**

Summary judgment as requested by SafePoint should be granted if no genuine issue of material fact exists and SafePoint is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Whether a fact is "material" turns on the substantive law governing the claims. *Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute over a material fact is genuine only if the evidence in the summary judgment record suffices for a reasonable fact finder to return a verdict in favor of the nonmoving party. *Id.* Here, there is no dispute regarding material facts—Plaintiff refused to produce the documents that he was required to pursuant to the SafePoint policy.

SafePoint, as the movant, bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, (1986); *see also Norman v. Apache Corp.* 19 F.3d 1017, 1023 (5th Cir. 1994). Once SafePoint meets the initial burden, which it has, the burden shifts to Plaintiff, who *must* point to evidence in the record sufficient for a reasonable fact finder to decide in his favor. *Allen v. Rapides Parish Sch. Bd.*, 204 F.3d 619, 621 (5th Cir. 2000).

A scintilla of evidence, conclusory allegations, speculations, and unsubstantiated assertions will not carry Plaintiff's burden of rebutting SafePoint's initial showing. *Anderson,* 477 U.S. at 252, *see also Ragas v. Tennessee Gas Pipeline Co.,* 136 F.3d 455, 458 (5th Cir. 1998); *Douglass v. United Services Auto. Assn,* 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc); *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). Courts will not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." *McCallum Highlands v. Washington Capital Dus, Inc.,* 66 F.3d 89, 92 (5th Cir. 1995).

As will be shown, SafePoint is entitled to summary judgment because Plaintiff breached his contractual obligation to provide SafePoint with requested documents regarding his fire claim and that breach materially prejudiced SafePoint's investigation. *See, e.g., Johnson v. State Farm Mut. Auto. Ins. Co.*, 2013 U.S. Dist. LEXIS 70456, (E.D. La. May 17, 2013).

## II. PLAINTIFF WAS CONTRACTUALLY OBLIGATED TO COOPERATE WITH SAFEPOINT IN THE INVESTIGATION OF HIS FIRE CLAIM

Pursuant to the contractual terms of the subject Policy with SafePoint, Plaintiff was obligated to cooperate with SafePoint throughout the investigation of his fire claim. Louisiana law applies to the interpretation of the subject Policy because the basis of the Court's jurisdiction is diversity of citizenship, the property is located in Louisiana, the loss occurred in Louisiana, and the policy was issued in Louisiana. *Keelen v. Metro. Prop. & Cas. Ins. Co.*, 2012 U.S. Dist. LEXIS 73669, at *10 (E.D. La. May 29, 2012).

Under Louisiana law, "[a]n insurance policy is a contract between the parties and should be construed by using the general rules of interpretation of contracts set forth in the Louisiana Civil Code." *Vanderbrook v. Unitrin Preferred Ins. Co. (In re Katrina Canal Breaches Litig.)*, 495 F.3d 191, 206 (5th Cir. 2007) (*citing Cadwallader v. Allstate Ins. Co.*, 848 So. 2d 577, 580 (La. 2003)). The words of a contract must be given their generally prevailing meaning. La. C.C. art. 2047; *see also Cadwallader*, 848 So. 2d at 580. "When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." La. C.C. art. 2046. If the policy wording at issue is clear and unambiguously expresses the parties' intent, the insurance contract must be enforced as written. *Vanderbrook*, 495 F.3d at 207.

Additionally, an insurance contract should not be interpreted in an unreasonable or strained manner under the guise of contractual interpretation in order to enlarge or restrict its provisions beyond what is reasonably contemplated by unambiguous terms, or to achieve an absurd conclusion. *Id.* at 208. Traditionally, jurisprudence, dictionaries, and treatises have been found to be appropriate resources in ascertaining a term's generally prevailing meaning. *Id.* at 210.

Furthermore, compliance with insurance policy provisions is a condition that must be met in order for an insured to proceed with a suit against the insurer. *Mosadegh v. State Farm Fire & Cas.*

*Co.*, 2008 U.S. Dist. LEXIS 79124, at *9 (E.D. La. Oct. 8, 2008), *aff'd*, 330 F. Appx 65 (5th Cir. 2009) (*citing Lee v. United Fire & Casualty Co.,* 607 So. 2d 685, 688 (La. Ct. App. 1992)). Failure to comply with the policy provisions may manifest itself in several different ways, including "a refusal to submit to an examination under oath or a refusal to produce documents," which is also know as a refusal to cooperate. *Id* at *10.

In the instant matter, SafePoint issued a policy to Plaintiff which included the following language:

**CONDITIONS**

\* \* \*

**4. Your Duties After Loss.** In case of a loss to covered property, you must see that the following are done:

\* \* \*

c. prepare an inventory of damaged personal property showing the quantity, description, actual cash value and amount of loss. Attach all bills, receipts and related documents that justify the figures in the inventory;
d. as often as we reasonably require:
    (2)    show the damaged property;
    (3)    provide us with records and documents we request and permit us to make copies; and
    (4)    submit to examination under oath, while not in the presence of any other named insured, and sign the same;

\* \* \*

(Ex. 1-1 p. 17). Thus, Plaintiff was contractually obligated to provide SafePoint with records and documents "as often as" SafePoint reasonably required. As will be shown, Plaintiff failed to provide SafePoint with crucial documents that materially prejudiced SafePoint's investigation.

### III. PLAINTIFF BREACHED HIS DUTY TO COOPERATE WITH SAFEPOINT BY FAILING TO PROVIDE REQUESTED DOCUMENTS

In the instant matter SafePoint retained an independent investigator with U.S. Forensics to examine the property on October 19, 2017, two days after the subject fire. SafePoint notified

Plaintiff on October 23, 2017 that it would be commencing an investigation into his claim regarding the subject fire. (*See* Ex. 1-2). On October 26, 2017, SafePoint's investigator produced a report stating that the fire was caused deliberately. (Ex. 2-1). After the reviewing the report compiled by U.S. Forensics along with that of the St. Tammany Fire Department, SafePoint concluded that there was reason to believe that the fire was incendiary in origin and, for that reason, the damage may not be covered under the policy at issue due to the intentional acts of Plaintiff.

In order to further investigate this, counsel for SafePoint requested additional documentation from Plaintiff including but not limited to: copies of any loan agreements or evidence of indebtedness for Plaintiff or his business from 2015 to present; copies of any and all employment records documenting Plaintiff's employment before and on the date of the incident and substantiating his whereabouts on October 14, 2017; copies of any and all cell phone records for any and all residents of the loss location or Plaintiff's current residence; and any and all documents substantiating Plaintiff's income and/or debt for the three years up to and including the date of loss. (*See* Ex. 1-3). All of these documents directly relate to arson, and SafePoint was materially prejudiced as a result of Plaintiff's failure to produce them.

On October 23, 2017, SafePoint sent Plaintiff correspondence regarding Plaintiff's duties under the policy to cooperate with SafePoint in the investigation of his claim and to provide certain documentation related to the loss, including a recorded statement, a copy of the fire report compiled by the St. Tammany Parish Fire Department, documentation of the amount spent on repairs, photos of the damage, the names of any witnesses, any building material removed for purposes of examination by an independent expert, and an executed Sworn Statement in Proof of Loss. (Ex. 1-2).

On October 27, 2017, SafePoint again requested production of the outstanding documents from Plaintiff. (*See* Ex. 1-3). While Plaintiff and his spouse, Sandra Johnson, participated in EUOs,

both either failed to or refused to produce the prior-requested documents or disclose certain information during the examinations. Ex. 3 pp. 27-28; Ex. 4 p. 45-47; Ex. 5 pp. 25-43; and Ex. 6 pp. 5-6, 28-29, 85-87. For instance, when asked whether she came prepared with the prior-requested documentation during her initial EUO taken on December 19, 2017, Ms. Johnson stated:

> Q: What about, I guess, the other items from—do you recall receiving—this is Exhibit 8 from Mr. Johnson's examination under oath (indicating). Do you recall seeing this letter?
>
> A: Yes.
>
> Q: And did you bring any information or documentation to—as requested, these items?
>
> A: No.
>
> Q: Any reason why not?
>
> A: Because some of it, I thought, was intrusive and none of your business.

(Ex. 5 p. 25:9-21).

On January 9, 2018, SafePoint again requested production of the outstanding documents. (Ex. 1-5). On January 24, 2018, Plaintiff's counsel informed SafePoint that Plaintiff was "not going to provide any further items in this matter." (Ex. 1-6). Therefore, SafePoint formally denied the claim on February 9, 2018 as a result of Plaintiff's failure to cooperate with the investigation. (Ex. 1-7). Plaintiff's blatant refusal to provide the documents requested on multiple occasions renders him in violation of the "Duties After Loss" clearly enumerated in the policy, the language of which requires him to "provide [SafePoint] with records and documents" it requests. (Ex.1-1 p. 17) Accordingly, SafePoint is entitled to a judgment as a matter of law that Plaintiff's claim is not covered under the policy at issue and, consequently, SafePoint owes no payment.

## IV. PLAINTIFF'S BREACH OF DUTY TO COOPERATE MATERIALLY PREJUDICED SAFEPOINT'S INVESTIGATION

An insurer is not liable for its insured's loss if the insured's "breach of a cooperation clause is both material and prejudicial to the insurer." *Johnson v. State Farm Mut. Auto. Ins. Co*., 2013 U.S. Dist. LEXIS 70456, at *28 (E.D. La. May 17, 2013) (*citing Lee v. United Fire & Casualty Co.,* 607 So. 2d 685, 688 (La. Ct. App. 1992); *Williams v. Lowe*, 2002-355 (La. App. 5 Cir. 10/16/02); 831 So. 2d 334; *Trosclair v. CNA Ins. Co.*, 93-1741 (La. App. 4 Cir. 05/17/94); 637 So. 2d 1168). Courts have found material prejudice to exist when an insurer is "deprived . . . of the right to properly and thoroughly investigate the claim" resulting from a failure to cooperate on the part of the insured where the insurer has shown a diligent effort to obtain the information requested. *Beasley v. GeoVera Specialty Ins. Co.,* 2015 U.S. Dist. LEXIS 64551, at *14 (E.D. La. May 15, 2015) (*citing Kerr v. State Farm Fire & Cas. Co*., 934 F. Supp. 2d 853, 861 (M.D. La. 2012)); *see also Natl Union Fire Ins. Co. v. Cagle*, 68 F.3d 905, 912 (5th Cir. 1995).

In *Johnson v. State Farm Mut. Auto. Ins. Co*., the Court held that an insured's failure to provide requested documentation "effectively shut down" the insurer's investigation into the plaintiff's fire claim where arson was suspected, thus materially prejudicing the insurer as a result. 2013 U.S. Dist. LEXIS 70456, at *19 (E.D. La. May 17, 2013). The *Johnson* Court further states that an insurer would be prejudiced under these circumstances, "regardless of whether the failure to cooperate is manifested by a refusal to submit to an examination under oath or a refusal to produce documents." *Id* at *26 (*quoting Lee v. United Fire & Casualty Co.* at 688) (internal quotations omitted).

Similarly to in *Johnson,* the forensic evidence in this case overwhelmingly indicates that the fire was incendiary in origin.[3] Plaintiff's willful refusal to cooperate with SafePoint materially prejudiced its ability to investigate whether the subject fire was caused by arson on the part of the insured. Arson by an insured has long been recognized by Louisiana courts as a coverage defense in claims for losses due to fire. In order to prove that damages due to fire are not covered because of arson, an insurer must prove that 1) the fire was incendiary in origin, and that 2) the insured was responsible for it. *Del-Remy Corp. v. Lafayette Ins. Co.*, 616 So. 2d 231, 233 (La. App. 5 Cir. 1993) (*quoting Rist v. Commercial Union Insurance Company*, 376 So. 2d 113 (La. 1979).

However, "[a] motive [on the part of the insured], plus the incendiary origin of the fire, would, in the absence of believable rebuttal evidence, be sufficient to sustain the affirmative defense [of arson] pleaded by the insurer." *Ashworth v. State Farm Fire & Cas. Co.*, 738 F. Supp. 1032, 1032 (W.D. La. 1990) (*quoting Sumrall v. Providence Washington Insurance Co.*, 221 La. 633, 60 So. 2d 68 (1952)).[4] Motive can be established by evidence such as that of an insured's financial hardship coupled with an inability to account for her whereabouts at the time of the fire. *See, e.g., Dawson v. Miller*, 594 So. 2d 970, 972 (La. App. 3 Cir. 1992).

Plaintiff's policy with SafePoint excludes coverage for losses caused by the intentional acts committed by an insured in order to cause a loss, such as arson:

---

[3] First, the St. Tammany Parish Fire investigated the Property and concluded, "Based on the evidence collected at the scene. . .investigators [are] determining the cause of this fire to be arson." (Ex 7 p. 18). Second, the cause and origin expert retained by SafePoint, Ted K. Kaplon, also investigated and concluded: "The fire . . . was incendiary in origin and was caused by the deliberate actions of an individual or individuals, and a flammable liquid was used to accelerate the fire." (Ex. 2-1 p. 1).

[4] Further, unlike a prosecutor in a criminal case, an insurer need only prove arson by a preponderance of the evidence, as opposed to beyond a reasonable doubt. *Id.* Evidence to prove arson can be "entirely circumstantial" if it is of such a nature that "it will sustain no other reasonable hypothesis but that the claimant is responsible for the fire." *Id.* (quoting *Sumrall*, 60 So. 2d).

## GENERAL EXCLUSIONS

> We do not insure for loss caused directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss.
>
> * * *
>
> **8. Intentional Loss**, meaning any loss arising out of any act committed:
>
> a. by or at the direction of you or any person or organization named as an additional insured; and
>
> b. with the intent to cause a loss.

(Ex. 1-1 p. 16 (originally marked as "Page 5 of 9")).

Because SafePoint suspected a potential coverage issue resulting from an "Intentional Loss," SafePoint needed information and documents from Plaintiff such as documents relating to his and Ms. Johnson's finances, employment, and cell phone records in order to perform a thorough and complete investigation. However, Plaintiff refused to provide SafePoint with these documents, and as a result, its investigation was materially prejudiced and stalled. Thus, Plaintiff's actions "deprived" SafePoint "of the right to properly and thoroughly investigate the claim" *Beasley* at *14.

### A. Plaintiff Failed to Provide Financial Documents

The most common type of motive that courts consider under an arson defense is financial — whether the insureds had financial difficulties at the time of the fire. *Dawson* at 972 (insured "needed money"); *Briggs v. New Hampshire Indem. Co.*, 579 So. 2d 1221, 1223 (La. App. 3 Cir. May 22, 1991) (insured's mother, who was a source of substantial income, died); *Rist v. Commercial Union Ins. Co.*, 376 So. 2d 113, 114 (La. January 1, 1979) (insured was bankrupt and had bad credit rating). However, the precarious financial condition of the insured does not have to be "catastrophic" to prove motive. *Evans v. State Farm Gen. Ins. Co.*, 36539 (La. App. 2 Cir. 12/11/02); 833 So. 2d 1143, 1147.

SafePoint needed access to documents related to Plaintiff's finances in order to determine whether he had the motive to destroy property for financial gain. For instance, it would have been useful for SafePoint to know whether the insured had any outstanding loans or if he had any other financial motive to intentionally cause the fire. Plaintiff's refusal to provide this information effectively halted SafePoint's investigation into whether there was a potential coverage issue, much like in *Johnson v. State Farm Mut. Auto. Ins. Co*, *supra*. Taking into consideration the Court's decision in *Johnson*, Plaintiff's refusal to provide SafePoint with the financial documentation requested materially prejudiced the investigation.

B. **Plaintiff Failed to Provide Documents Related to Employment**

Similarly, an insured's employment records can be helpful in assessing whether she may have had a financial motive to cause an intentional loss. Documentation reflecting recent unemployment, for instance, is helpful to an insurer's investigation to accompany other evidence of an intentional loss. In this case, Plaintiff and Ms. Johnson were asked multiple times to produce documentation relating to past and present employment, and both of them failed to comply. (*See* Ex. 1-3, 1-5, & 5). For instance, in Ms. Johnson's initial EUO, taken on December 19, 2017, when asked about her employment she stated:

Q: Where do you work now?

A: Nowhere now.

Q: Where did you work on the day of the – around the time of the fire?

A: Marshall's

\* \* \*

Q: How come you don't work there anymore?

A: I quit.

Q: Any reason why you quit?

A: I wanted – didn't want to work anymore.

(Ex. 5 p. 9: 8-12, 18-23).

When asked whether she had come prepared with the prior-requested employment documents, she stated:

BY MR. HAILEY

Q: Do you have them with you now?

A: No.

(Ex. 5 p. 36: 7-9).[5]

While Ms. Johnson is not a named plaintiff in this suit, she is married to the sole named plaintiff. Consequently, their finances are intertwined, and she would assumedly be a part-owner of the damaged property purportedly covered by the SafePoint policy. Plaintiff even admitted in his follow-up EUO on December 19, 2017, "By law, I think [Sandra] owns half of everything." (Ex. 4, 139:19-20). As a result, any financial hardship that Ms. Johnson was experiencing around the time of the fire directly affects and may have contributed to hardship Plaintiff himself may have been experiencing at that time. Thus, records of Ms. Johnson's employment, or lack thereof, were essential to SafePoint's investigation in order to determine possible motive on the part of the insured. As such, Plaintiff and Ms. Johnson's failure to provide those records materially prejudiced SafePoint's investigation.

---

[5] Plaintiff was also asked to provide various prior-requested documents in both of his EUOs, and each time he provided a response that led SafePoint to believe that Ms. Johnson would be the more appropriate person to ask for the information. (*See* Ex. 3, 4).

### C. Plaintiff Failed to Provide Cell Phone Records Which Could Be Evidence of Opportunity

Courts also consider whether the insured had the opportunity to set the fire. *Rist v. Commercial Union Ins. Co.*, 376 So. 2d 113, 115 (La. 1979); *Cowen v. Allstate Ins. Co.*, 2011 U.S. Dist. LEXIS 134885 *16, (E.D. La. November 22, 2011); *Miley v. United States Fid. & Guar. Co.*, 94-1204, *21 (La. App. 1 Cir. 04/07/95); 659 So. 2d 792 (insured travelled to property the day before the fire); *Del-Remy Corp. v. Lafayette Ins. Co.*, 616 So. 2d 231, 235 (La. App. 5 Cir. 1993); *Ashworth v. State Farm Fire & Casualty Co.*; *Chilsholm v. State Farm Fire & Casualty Co.*, 618 So. 2d 1059, 1062 (La. App. 1 Cir. 1993) (insured travelled to the property from Tennessee to Louisiana the day before the fire).

One way to establish whether an insured had opportunity to start a fire is to check cell phone records to determine the insured's location at the time of the fire and determine whether the insured had any conversations with suspected accomplices. Although Plaintiff and his spouse were asked multiple times to provide cell phone records for the dates up to and including the date of the fire, these documents were never produced. As a result, SafePoint was deprived of its right to perform a thorough investigation into whether the insured had opportunity to set the fire. For this reason, SafePoint was materially prejudiced as a consequence of Plaintiff's breach of his contractual duty to cooperate.

### D. Plaintiff's Conduct Was Protracted and Willful

Although not a required elements to deny an insured's claim, in *Johnson v. State Farm Mut. Auto. Ins. Co*, the Court states that a breach of the duty to cooperate contained within the provisions of an insurance policy that is "protracted and willful" constitutes a "material breach." 2013 U.S. Dist. LEXIS 70456 at *32 (*quoting Lee* at 687). In *Lee v. United Fire & Casualty Co*, quoted by the Court in *Johnson*, although the insured appeared for a "sworn statement" he "refused to furnish any

financial information." 607 So. 2d 685, 685 (La. App. 4 Cir. 1992). The Court in *Lee* held that such behavior constituted a "protracted, willful, and apparently bad faith refusal to furnish information and documents." *Id* at 687.

In the instant matter, Plaintiff and his wife failed to produce documents requested on multiple occasions because, according to Ms. Johnson, "it was intrusive and none of [SafePoint's] business." (Ex. 5 p. 25: 21). Furthermore, after two attempts at taking an EUO of both Plaintiff and his spouse, SafePoint again requested production of the outstanding documents. In response to this final request, Plaintiff informed SafePoint that he was "not going to provide any further items in this matter."(Ex. 1-6). Considering the Court's ruling in *Lee*, Plaintiff's behavior was protracted and willful. Thus, Plaintiff materially breached his duty to cooperate with SafePoint.

## **CONCLUSION**

There are no issues of material fact regarding whether Plaintiff produced the requested documents. Plaintiff's blatant refusal to furnish the requested documentation materially prejudiced SafePoint's ability to conduct a thorough investigation into whether Plaintiff's claim was covered under the policy. Accordingly, SafePoint Insurance Company respectfully requests that the Court grant its Motion Summary Judgment dismissing Plaintiff's claims against SafePoint with prejudice at Plaintiff's cost.

Respectfully submitted,

*/s/ James V. King, III*
JAMES W. HAILEY, III (23111)
JAMES V. KING, III (36106)
LESLIE E. KNOWLES (38304)
Lewis Brisbois Bisgaard & Smith
400 Poydras Street, Suite 1300
New Orleans, Louisiana 70130
Tel: (504) 322-4100
Fax: (504) 754-7569
Email: james.king@lewisbrisbois.com
*Counsel for SafePoint Insurance Company*

## **CERTIFICATE OF SERVICE**

I certify that a copy of the above and foregoing pleading has been served upon all parties of record by online filing to the Federal EM/ECF system, this 5th day of February, 2019.

*/s/ James V. King, III*
James V. King, III